NO. 3082

Opinion construing "Limitation of Payments"
clause of Senate Bill 427, Regular Session,
46th Legislature, and holding

1. Clause is constitutional.

2. Board's authority relates only to surpluses
   in funds dedicated or devoted to a depart-
   ment's use and benefit, but not appropriated
   to that department elsewhere than in the
   "Limitation of Payments" clause.

3. Where authority of department to employ
   additional salaried workers is denied,
   Board has not the power to authorize such
   employment.

4. Board has no authority to authorize use of
   surplus, or any portion of it, for "travel-
   ling expense."

5. Board has authority to deal only with
   "actual" surpluses, not with "estimated"
   surpluses.

OFFICE OF THE ATTORNEY GENERAL

August 30, 1939

Hon. W. Lee O'Daniel
Governor of Texas
Austin, Texas

Dear Sir:                           Opinion No. O-1321
                                    Re: General Appropriation Bill--
                                        Constitutionality of and auth-
                                        ority conferred upon the
                                        "Limitation of Payments"
                                        Board.

        We have for acknowledgment your letter of August 23rd,
wherein you request the opinion of this Department upon the fol-
lowing questions:

        "1.  Did the Legislature have the constituional
authority to confer upon the Board which was created
under the paragraph headed 'Limitation of Payments' of
Section 2 of Senate Bill No. 427, of the Regular Session
of the Forty-sixth Legislature, such powers as are given
to it in the Bill?

        "2.  If question No. 1 is answered in the affirmative,
then to what fund does the authority of the Board relate?

        "3.  If question No. 1 is answered in the affirmative,
may the Board, in instances where the special rider follow-
ing a particular departmental appropriation, which provides
that 'No salaries except extra labor, shall be paid except

those herein specifically itemized,' authorize
the employment of additional salaried individuals
by department in the event the availability of
funds and the necessity for using the same for
such purpose is properly demonstrated to the
Board by the department head.

"4. May the Board, in any event, allow ad-
ditional amounts for 'traveling expenses' over
and above the amounts specifically itemized for
such purposes?

"5. If question No. 1 is answered in the
affirmative, then please advise whether the Board
is authorized to deal with an estimated surplus,
or must there be on hand in the special fund
an actual surplus before the Board is authorized
to allow additional expenditures?"

In reply to your first question, we beg to advise
that in our opinion the provision of the General Appropria-
tion Bill creating the "Limitation of Payments" Board, com-
posed of the Governor, the Treasurer, and the Attorney General,
is a valid exercise of the legislative authority, under
the Constitution of the State of Texas. The "Limitation of
Payments" clause is, in effect, an appropriation of certain
funds for expenditure for stated purposes by the particular
department of the State government, upon the happening of
a certain condition, that is, that it shall become neces-
sary to expend such funds in order that the functions of the
particular department may be performed adequately. The
appropriation is made by the Legislature, and is complete
and the function of the Board is not to appropriate moneys,
but to determine whether the conditions authorizing expendi-
ture of moneys appropriated by the Legislature actually
exist. The Board acts in the capacity of a fact-finding
agency, to determine whether there is actually a surplus
available for expenditure, and to determine whether it is
necessary, in order that the functions of the particular
department may be performed adequately, that such surplus
or a portion thereof be expended.

The validity of such a provision in an appropria-
tion bill was recognized in the case of Terrell vs. Sparks,
135 S.W. 519, wherein the Supreme Court of this State held
sufficiently specific as an appropriation, an appropriation
bill providing a sum of money for the use of the Attorney
General for certain purposes, to be expended by him, by and
with the approval of the Governor.

See also State ex rel. Normal Schools vs. Zimmer-
man, 183 Wis. 132, 197 N.W. 823. Cases apparently contra
will be found in 91 A.L.R. note at page 1512, but in most
of the cases there cited, the constitutional requirements
are different from those in Texas. We find nothing in our
Constitution expressly or impliedly prohibiting the Legisla-
ture from making an appropriation of moneys to be expended
upon the happening of a condition subsequent, and from
setting up a fact-finding agency to determine whether or not
such condition subsequent has actually occurred, so as to
authorize the expenditure of such appropriated sums.

Your second question may be restated as follows:

"To what type of surplus fund does the authority of the 'Limitation of Payments' Board relate?"

The Limitation of Payments clause, as it appears in the General Rider to the General Appropriation Bill of the 46th Legislature, reads as follows:

"Limitation of Payments. Except as otherwise provided, whenever, by virtue of the provisions of this Act, items are to be paid out of fees, receipts, special funds or out of other funds available for use by a department, it is the intention of the Legislature to limit expenditures out of said fees, receipts, special funds or other available funds to the purposes and in the amounts itemized herein, and it is so provided. If, however, the amount of the fees, receipts, special or other available funds herein referred to are more than sufficient to pay the items herein designated to be paid therefrom, the department to which the said fees, receipts, special funds or other available funds are appropriated may, if necessary to adequately perform the functions of said department, use any portion of said surplus fees, receipts, special funds or other available funds; provided, however, that before doing so the head of such department shall, under oath, make application, jointly, to the Governor, the Attorney General and the State Treasurer setting forth in detail the necessity for using such surplus fees, receipts, special funds or other available funds and itemizing the purposes for which the same are to be used. Unless the application is approved by at least two of the three persons aforementioned, the surplus fees, receipts, special funds or other available funds shall not be expended. Any item set out in the application can be deleted by decision of a majority of the three persons aforementioned. All applications which are approved or denied must be signed by those voting to approve or deny same. Said applications, after approval or rejection, shall be filed with and retained by the State Auditor for a period of six months after the expiration of the biennium ending August 31, 1941, and shall remain open to public inspection during said period. All surplus fees, receipts, special funds, or other available funds on hand at the end of each year of the biennium shall revert to the General Revenue Fund of this State unless otherwise prohibited by law, or unless otherwise provided herein. No salary paid additional employees shall exceed the amount herein appropriated for similar positions. All disbursements shall be made on warrants issued by the Comptroller on the State Treasury."

In answering your second question, the first point which presents itself for consideration is whether or not the term "other available funds," as used in the Limitation of Payments clause, is intended to include appropriations made from the General Revenue Fund. It is to be observed

that the Limitation of Payments clause does not refer to appropriations made from the General Revenue Fund, but only relates to surpluses existing in fees, receipts, special funds or other available funds.

It will be observed that in three separate and distinct places in the General Rider to the General Appropriation Bill, the Legislature has referred specifically to appropriations from the General Fund, in addition to "fees, receipts or special funds, and other available funds."

In the section of the General Rider relating to "traveling expenses," this sentence is found:

> "This provision shall be applicable whether the item for traveling expenses is to be paid out of the appropriation from the General Fund, from fees, receipts or special funds collected by virtue of certain laws of this State, or from other funds, (exclusive of Federal funds) available for use by a department."

In the section on "Salary Payments," this provision is found:

> "Each department head shall number consecutively the salaried positions in his department for which an appropriation is made herein (either out of the General Revenue Fund, fees, receipts, special funds or out of other funds available for use by such department) and opposite the number of the position, he shall set out the title of the position and the name of the person employed to fill the same."

And in the section on the "Preparation of the Budget" it is stated:

> "The Board is directed to designate, with reference to each position, whether the same is to be paid out of appropriation from the General Revenue Fund, from fees and/or receipts collected by virtue of the laws of this State, or from other available funds. In the event the salary of a position is to be paid jointly out of an appropriation from the General Revenue Fund, out of fees, receipts, special funds, or out of other available funds, the Board of Control shall indicate the portion paid or to be paid from each. No salary items shall include an appropriation for more than one employee. The Board shall follow the same procedure in itemizing other expenditures to be made by the departments of this State."

In the "Limitation of Payments" clause the reference to appropriations from the General Fund is eliminated, and since in every other instance the Legislature, where it desired to include appropriations from the General Fund, has specifically mentioned them, it must necessarily be presumed that the Legislature intended to excluse appropriations from the General Fund from the "Limitation of Payments" clause. This conclusion is reenforced, when we observe that, in the very nature of things, there can be no surplus in an appropriation from the General Fund, for, with respect to appropriations from the General Fund, the Legislature does not provide

a definite and fixed sum of money to be available at all events, but provides for a particular purpose only such sum of money as may be necessary for that particular purpose, not to exceed the maximum amount made available for such purpose. This conclusion is compelled by the provisions of Section 1 of the General Appropriation Bill, which provides in part as follows:

"That the several sums of money herein specified or so much thereof as may be necessary, are hereby appropriated out of any moneys in the State Treasury not otherwise appropriated, ..."

Having determined that the authority of the Board cannot relate to supposed surpluses existing in appropriations made from the General Fund, the question naturally arises as to what type of funds it was contemplated by the Legislature should be within the jurisdiction of the Board set up in the Limitation of Payments clause.

It is apparent that it was not intended thereby to set up the Board as the supervising agency by the authority of which all funds appropriated by the Legislature for the various department should be spent, for the first sentence in the "Limitation of Payments" clause, when considered with the second sentence, clearly evinces the intent of the Legislature that the Board should be authorized to deal only with "surpluses," and that the departments are free to expend such funds as are provided it by the Legislature which do not come under the head of "surplus funds."

The existence of a surplus in a particular special fund may only be ascertained by determining whether there is in that special fund an amount of money in excess of that which the Legislature has specifically authorized the department to expend without procuring the permission of the Board. The first sentence in the "Limitation of Payments" clause would reflect clearly the intent of the Legislature to limit the expenditures which might be made by a Board without authority from the Limitation of Payments Board to items of expenditures for which specific and limited amounts have been provided in the Bill, were it not for the use of the phrase, at the beginning of the sentence, "except as otherwise provided." Is this phrase to be construed as applicable to the method provided for the expenditure of a surplus fund by the second sentence of the "Limitation of Payments" clause, or is it to be construed as reflecting the intent of the Legislature that the various departments shall limit their expenditures to those items for which particular and definitely limited amounts are provided, except in the instances where the Legislature has seen fit to appropriate to a particular department, by special rider, the entire surplus, to the uses of the department for the performance of the functions and duties imposed upon it by law.

In determining this question, it is essential that we examine the Appropriation Bill as a whole, having due regard for the rule that the intention of the Legislature must be gathered from the entire instrument rather than from a particular and isolated portion thereof. In making such an examination of the entire Bill, it becomes readily apparent

that there are two separate and distinct classes of appropriations made from fees, receipts, and special funds.

The first of these classes is typified by such departmental appropriations as those for the Board of County and District Road Indebtedness, the State Highway Department, the State Department of Education, and the State Banking Board.

In each of these examples, there is found a common characteristic. In each of the exampled situations, there is distinct appropriation out of a special fund for various items definitely limited as to purpose and amount. But in each instance there is also, in addition to the items definitely limited as to purpose and amount, an appropriation of the surplus limited as to purpose but unlimited as to amount, excepting insofar as the amount of funds accruing to the special fund during the period of time concerned will automatically operate to limit the amount available for expenditure.

In the appropriation for the State Banking Department the Legislature begins by appropriating for various purposes certain definite and fixed amounts. The special rider attached to and accompanying such appropriation provides in part as follows:

"Subject to the limitations set forth in the provisions appearing at the end of this Act, all appropriations herein made for the State Banking Department shall be paid out of their receipts, and the Commissioner shall reduce his expenditures so as not to exceed the actual receipts collected.

"...For the purpose of enforcing the credit union laws of this State, all fees collected under, and by virtue of Chapter 11, Acts of the 41st Legislature, and all unexpended balances are hereby appropriated to the State Banking Department."

The appropriation for the Board of County and District Road Indebtedness begins by providing certain items definite as to amount and purpose, for administrative expense, said items to be paid out of the County and Road District highway fund. The special rider appearing immediately following this appropriation as a part thereof, reads in part as follows:

"All other receipts and any prior year's balance in the County and District Highway Fund are hereby appropriated for each of said years for the purpose of carrying out the provisions of Chapter 13, General Laws of the Third Called Session of the 42nd Legislature, and any amendments thereto, including the payment of road bonded indebtedness and of special road districts in accordance with said laws, and amendments."

For the division of the Department of Education styled "Employees of the Textbook and Curriculum Division and Textbook Depository" there are provided certain items definitely limited as to purpose and amount. The special rider to the Department of Education appropriation reads in part as follows:

"For the purposes provided by law, there are
reappropriated for the biennium ending August 31,
1941, to the State Board of Education, all incomes
to, and any balance in, the available School Fund
and the State Textbook Funds, except as otherwise
appropriated by this Legislature, to be expended
and distributed in accordance with the laws of this
State; provided that textbooks may be purchased
only from funds arising from the State ad valorem
school tax."

And in the appropriation for the State Highway De-
partment, we find various items provided, limited definitely
as to purpose and amount, the special rider appended thereto
however, providing as follows:

"Provided, that the above and foregoing amounts
appropriated herein for the State Highway Department
and for services rendered for other agencies of the
State government to the State Highway Department
shall be paid out of the State Highway Fund upon
warrants issued by the State Comptroller, as provided
by Chapter 1, Title 116, Revised Civil Statutes, 1925,
and amendments thereto; provided further that all
funds or balances of funds on hand September 1, 1939,
and all funds coming into the State Highway fund,
and derived from registration fees or other sources,
after deducting the total of the specific appropria-
tions herein made or hereby appropriated to the
State Highway Department for the establishment of
a system of state highways and the construction and
maintenance thereof, as contemplated and set forth
in Chapter 1, Title 116, and Chapter 186, general
laws of the Regular Session of the 39th Legislature,
and amendments thereto."

The other distinct class or type of appropriation
from a special fund is composed of those instances wherein
the Legislature has appropriated to the particular department,
out of the special fund dedicated to the use of that depart-
ment, certain items definitely limited as to purpose and
amount, and has made no disposition of the surplus in such
special fund by special rider appended to the particular
departmental appropriation. Typical of this class of appro-
priation are the appropriations for the State Board of Barber
Examiners, State Board of Dental Examiners, and the State
Board of Hairdressers and Cosmetologists.

In the appropriation for the State Board of Barber
Examiners, the Legislature, after providing certain items
definitely limited as to purpose and amount, continues in
this special rider as follows:

"Subject to the limitations set forth in the
provisions appearing at the end of this Act, the
foregoing amounts for the State Board of Barber Ex-
aminers are hereby appropriated out of the State
Board Barber Examiners fund ..."

And in the appropriation for the State Board of
Dental Examiners, the Legislature, after providing certain

items definitely limited as to purpose and amount, continues in the special rider appended thereto, as follows:

"Subject to the limitations set forth in the provisions appearing at the end of this Act, all appropriations made herein for the State Board of Dental Examiners, shall be paid out of their local receipts."

And in the appropriation for the State Board of Hairdressers and Cosmetologists, the Legislature, after providing certain items definitely limited as to subject and amount, continues in the special rider appended to that appropriation, as follows:

"Subject to the limitations set forth in the provisions appearing at the end of this Act, all appropriations made herein for the State Board of Hairdressers and Cosmetologists shall be paid out of their local receipts."

In none of these departmental appropriations, or in others of that type, do we find any attempt on the part of the Legislature to provide for the disposition of any surplus in the special fund, by the special rider appended to the particular departmental appropriation.

We are thus confronted with the problem of whether the Legislature intended the "Limitation of Payments" clause to apply only to those instances where it has by the special rider appended to the particular departmental appropriation, appropriated the surplus in the special fund to the use and benefit of the particular department, or, on the other hand, were the words "except as otherwise provided" intended to eliminate those specific appropriations of the surplus from the application of the "Limitation of Payments" clause, and was that clause, therefore, intended as a conditional appropriation of those surpluses which might exist in special funds, in instances where the Legislature had, by rider to the particular departmental appropriation, made no effort to place such surpluses at the disposal of the particular department?

When there are two possible interpretations which may be placed upon an enactment of the Legislature, the courts will adopt that construction which accords with reason. Conversely stated, the courts will not adopt a construction which leads to an unreasonable and absurd conclusion, if there is another possible interpretation which is more rational and sensible. The rule is stated in 25 Ruling Case Law, at page 1019, as follows:

"While the Legislature may pass absurd legislation if it is so inclined, before a court will adopt such a construction of a statute as will lead to an absurdity, it will inquire whether there is not some other interpretation possible which will not lead to that result. If the language employed admits of two constructions and according to one of them the enactment would be absurd, if not mischievous, while according to the other it will be reasonable and wholesome, the construction which will lead to an absurd result should be avoided."

In support of these conclusions, that work cites many authorities from the Supreme Court of the United States.

And by this same work it is stated, at page 1025, that:

"Where great inconvenience will result from a particular construction that consturction is to be avoided, unless the meaning of the Legislature be plain."

Applying such rules to the problem under consideration, it would seem to be manifest that the Legislature did not intend that the "Limitation of Payment" clause should apply to such surpluses as were definitely appropriated by the Legislature to the use of a particular department by special rider to the departmental appropriation. To hold otherwise, would be to say that the Legislature intended to create an absurd and mischievous situation calculated to impair materially the functions of State government, and to result in great inconvenience in its administration.

At the outset it must be remebered that the members of the Limitation of Payments Board are public officials upon whom most onerous duties, occupying practically all of their time, have been imposed by law. To impose upon them the additional duty, in effect, of supervising completely the expenditure of funds by such departments as the State Highway Department and the Board of County and District Road Indebtedness, as well as the State Board of Education, would be to impair materially the performance of those duties the discharge of which is made their prime function by the Constitution and laws which created their positions.

As illustrating the absurdity of such an interpretation, we may examine the appropriation for the Board of County and District Road Indebtedness. The prime function for which this Board was created by law is that of disbursing certain State funds, for certain State purposes, in the amount and according to the manner set up in great detail by the law which gives the Board its being. Was it intended by the Legislature that before this Board could perform the very function for which it was created, that it should be required to demonstrate to the Limitation of Payments Board the necessity for so doing?

We pass to the appropriation for the State Highway Department. The State Highway Department is created by statute for the purpose of establishing, constructing, and maintaining a system of highways in this State. The laws which create the Board have made it the prime function and duty of that Board to determine where highways should be built, of what they should be constructed, and how much and what character of cement should be used in their construction, if cement be used at all, when the necessity for maintenance work exists, and what character of maintenance work need be done in order to preserve and protect such highways and insure maximum life and servicability. The determination of such questions calls for a high degree of familiarity with the subject, and for expert technical knowledge. Was it intended by the Legislature that, as to the Highway Department, the Governor, the Attorney General, and the State Treasurer, the members of the Limitation of

Payments Board, should determine the question as to whether or not it was necessary to build a strip of highway from Whosit to Whatsit, the route the highway should take (that is, whether it was necessary that the highway go by the particular route designated by the Highway Department), whether the quantity or type of cement recommended by the Highway Department for the particular project was actually necessary, or whether a lesser amount and an inferior grade might do, or whether money should be spent for maintaining a particular stretch of highway, as recommended by the State Highway Department, instead of abandoning it and building a new one?

Was it the intention of the Legislature, with respect to the appropriation for the State Banking Department, for the purpose of enforcing the credit union laws of the State of Texas, that the Limitation of Payments Board should determine what was necessary to be done by the Banking Department to enforce the credit union laws of the State and how much money should be expended for that purpose? Was it intended by the Legislature, with respect to the State Board of Education that the Limitation of Payments Board should determine whether it was really necessary, if recommended by the State Board of Education, that a certain number of textbooks be purchased, and that they be of the particular type recommended by that Board?

Was it intended that the members of the Limitation of Payments Board read the textbooks which the State Department of Education proposes to purchase and determine thereby whether the necessity for purchasing a particular textbook actually existed, or whether such textbook was out-moded and out-dated and, therefore, it was not necessary that it be purchased?

It seems to us that to ask these questions is to provide the answers thereto. Certainly such a ridiculous and absurd situation was not within the contemplation of the Legislature. It was definitely not intended by the Legislature, it seems to us, that the administration of such affairs of government should be taken out of the hands of those qualified and designated by the general laws of the State to perform them, and placed in the hands of those whose experience, training, and opportunity of knowledge of the particular subjects involved is and must necessarily be and remain so limited that the greatest confusion and inconvenience in the administration of such affairs of the State government would necessarily ensue.

By way of emphasizing the points we make above, we call attention to the appropriation made by the Legislature for the Examining Division of the Board of Insurance Commissioners. We find here that the Legislature has appropriated certain items definitely limited as to purpose and amount out of a special fund and, by its rider, has appropriated not only such an amount from the special fund as is necessary to take care of the specific items provided, but has also appropriated the entire balance of the fund to be used by the Department for employing additional help and for defraying all other expenses necessary for the administration of Chapter 152, of the General Laws of the Regular Session of the 42nd Legislature, and Chapter 264

of the General Laws of the 44th Legislature, and any and
all amendments thereto and as amended by Senate Bill 397,
Acts, Regular Session of the 46th Legislature, 1939, and
has further provided in said special rider as follows:

> "The head of the department shall make ap-
> plication to the Board of Control and receive its
> approval in writing before employees, other than
> those itemized in the Appropriation Bill, are
> employed. Said application shall set out the
> reasons and necessities for the employment of
> the additional employees."

Was the absurdity intended here by the Legislature
that this Department should apply to the Board of Control
for permission to employ additional help, demonstrating
the necessity therefor, and thereupon should also apply
to the Limitation of Payments Board for the same authority?
If one of these Boards granted such permission and the
other refused to do so, which action should govern?
It seems to us that by this particular rider, the Legis-
lature has definitely demonstrated its intention that
appropriations of surpluses of this character, made by
the special rider to the particular depertmental appro-
priation, are to be available for the use of the particu-
lar department according to the terms of the special rider,
and are not intended to be available for the uses of the
Department only in the event that the necessity for using
them for such purposes is demonstrated to the Board in
the manner provided in the "Limitation of Payments" clause
in the general rider.

The "Limitation of Payments" clause is suscep-
tible of a construction which appears to be much more
reasonable, and it is that construction which we adopt as
reflecting the true intent and purpose of the Legislature
in enacting such a provision. Such interpretation is that
it was intended by the Legislature, in the enactment of
the "Limitation of Payments" clause, to make a conditional
appropriation of surpluses in certain special funds, in
instances where those surpluses had not been appropriated
and made available to the particular department by special
rider attached to and made a part of the particular depart-
mental appropriation. This construction, it appears to us,
is more nearly in accord with reason, for it will be observ-
ed that the departments thus coming under the jurisdiction
of the Board are, in the main, those departments of the
State government whose prime function is not that of ex-
pending State moneys for the accomplishing of certain
State purposes, but, on the contrary, is that of rendering
a certain type of service. They build no roads; they buy
no books; they discharge no bonded indebtedness for the
State. As to them, the Limitation of Payments Board may
operate effectively and efficiently, for the necessity
that they be permitted to use the surplus in their particular
fund arises from the possible need for additional clerical
help, or more money for postage, and stationery. The
purchase of material supplies and equipment is but in-
cidental to and a small part of the work of the department,
not its chief function.

The "Limitation of Payments" clause may, perhaps,
be made the more understandable by restating the first
portion of it, but preserving its original meaning, as fol-
lows:

"It is the intention of the Legislature
that expenditures out of fees, receipts, special
funds or other available funds shall be limited
to the purposes and in the amount itemized in
this Bill, except in those instances where we
have provided otherwise. It those instances
where provision otherwise has not been specific-
ally made herein, if the amount of the fees, re-
ceipts, special or other available funds herein
referred to, are more than sufficient to pay the
items to be paid therefrom, the department to
which the said items out of the said fees,
receipts, special funds or other available funds
are appropriated may, if necessary to adequately
perform the function of such department, use
any portion of said surplus fees, receipts, special
funds or other available funds, provided that be-
fore doing so, the head of such department shall,
under oath, make application, jointly, to the
Governor, the Attorney General, and the State
Treasurer, setting forth in detail the necessity
for using such surplus fees, receipts, special
funds or other available funds and itemizing
the purposes for which the same are to be used."

Answering your second question specifically,
therefore, we are of the opinion that the authority of the
Board relates only to those surpluses existing in funds
dedicated or devoted to the uses of a particular depart-
ment, where an appropriation of such surplus in such dedi-
cated funds to the particular department is not to be
found elsewhere than in the Limitation of Payments clause.

In answer to your third question, we beg to advise
that, in those instances where the Legislature has specifically
limited the authority of a particular department to expend
its funds by providing that "no salary except extra labor
shall be paid except those herein specifically itemized,"
this limitation upon the purposes for which appropriated
moneys may be expended binds not only the particular
department, but also the Limitation of Payments Board.
In the very nature of things, this must necessarily be
true, for, though the Board should authorize the expen-
diture of a surplus for the hiring of additional salaried
employees in such an instance, the Department would never-
theless continue to be bound by this limitation upon its
authority, for we find in the General Appropriation Bill
no authority conferred upon the Board, either expressly or
impliedly, to authorize the expenditure of moneys for pur-
poses for which the Legislature has stated and provided
specifically that the Department shall not spend them.

The observations stated above, in the immediately
preceding paragraph, apply even more forcibly to the Board's
authority to allow additional expenditures for traveling
expenses out of surpluses. In the General Rider to the
General Appropriation Bill, we find the following:

"It is provided that no expenditure shall
be made for traveling expenses by any department
of this State in excess of the amount of money
itemized herein for said purpose. This provi-
sion shall be applicable whether the item for

traveling expenses is to be paid out of the
appropriation from the General Fund, from
fees, receipts or special funds collected by
virtue of certain laws of this State, or
from other funds (exclusive of Federal funds)
available for use by a department."

This provision is clear, explicit, and needs
no construction, for it amounts to an absolute prohibition
against the expenditure of a greater amount for traveling
expenses than has been specifically allowed for such pur-
pose by the Legislature itself. Since we find no author-
ity conferred upon the Board, either expressly or implied-
ly, to ignore this provision in dealing with surpluses,
it follows that the board is without authority to allow
any additional amount whatsoever for traveling expenses
to any department out of any funds over which it has juris-
diction.

Answering your last question, you are advised
that, in our opinion, the Limitation of Payments Board
is authorized to deal only with "actual surpluses." In
other words, there must be on hand in the particular
special fund subject to the jurisdiction of the Board
an actual surplus before the Board may allow additional
expenditures, and, of course, it follows t'at the Board
may not authorize additional expenditures beyond the
amount of the actual surplus available. The Limitation
of Payments clause in terms relates only to a presently
existing, and not a prospectively available, surplus,
for it states:

"If, however, the amount of the fees, re-
ceipts, special or other available funds here-
in referred to _are_ more than sufficient to
pay the items herein designated to be paid there-
from, the department to which the said fees,
receipts, special funds or other available funds
are appropriated, may, if necessary to adequate-
ly perform the functions of said department, use
any portion of said surplus fees, receipts,
special funds, or other available funds; ..."

To hold that the Board is authorized to allow
obligations to be incurred by the Department against an
estimated surplus which may or may not accrue, would be
to do violence to the legislative intent, gleaned from
an examination of the entire appropriation bill, that ex-
penditures made and obligations incurred by any depart-
ment of the State government shall not exceed the amount
actually available to that Department for expenditure.

We trust that the foregoing will serve to ade-
quately answer the various questions presented by you.

Yours very truly

ATTORNEY GENERAL OF TEXAS

BY

R. W. Fairchild
Assistant

RWF:pbp

This opinion has been considered in conference, approved, and ordered recorded.

Gerald C. Mann
ATTORNEY GENERAL OF TEXAS